UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    JAMES H. SNYDER and                            Chapter 13
    CHERYL F. SNYDER,                                Case No.: 10-62052

                                  *Debtors*.
_____

APPEARANCES:

EDWARD J. FINTEL & ASSOCIATES          EDWARD J. FINTEL, ESQ.
*Attorneys for Debtors*
430 East Genesee Street, Suite 205
P.O. Box 6451
Syracuse, New York 13217

HISCOCK & BARCLAY, LLP                  J. ERIC CHARLTON, ESQ.,
*Attorneys for Watertown Savings Bank*
One Park Place
300 South State Street
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

On August 9, 2011, this matter came before the Court for an evidentiary hearing on the confirmation of the Amended Chapter 13 Plan (the "Amended Plan") filed by James H. and Cheryl F. Snyder ("Debtors") on August 3, 2011, which drew an objection from Watertown Savings Bank (the "Bank") filed on August 4, 2011 (the "Objection"). Although the Bank has raised numerous grounds in support of its Objection, the parties have agreed for purposes of this Memorandum-Decision and Order that the primary confirmation issue is whether the Amended Plan, which includes both partial surrender and cram down provisions, violates 11 U.S.C. §

1325(a)(1) and (a)(5) and thus cannot be confirmed as a matter of law.[1] Virtually all facts essential to the Court's adjudication of this contested matter are before the Court on the Joint Stipulation of Undisputed Facts (the "Joint Stipulation") filed by the parties on August 5, 2011. Post-hearing submissions were filed by the parties on September 13, 2011. After considering the record in its entirety and the applicable case law, the Court agrees with the Bank and accordingly denies confirmation of the Amended Plan.

## JURISDICTION

The Court has jurisdiction over the parties and this core contested matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(L), and 1334(a) and (b).

## FINDINGS OF FACT

The following findings of fact are mainly derived from the Joint Stipulation and the exhibits incorporated therein.

1. On or around December 14, 2005, the Bank approved a Commercial Mortgage to Debtors in an amount not to exceed $245,000.00, the proceeds of which were intended to be (and were) used by Debtors to purchase the Edwardsville Grocery Store located in Hammond, New York. (Debtors' Ex. 1.)

2. On or around February 9, 2007, Debtors and the Bank entered into a Commercial Loan Agreement. (Debtors' Ex. 2.)

3. Also on or around February 9, 2007, Debtors executed and delivered a promissory note to the Bank in the amount of $245,000.00, and granted a mortgage on the certain real property described more fully below to secure the promissory note. (Bank's Ex. P.)

---

[1] Unless otherwise noted, all statutory references herein are to the United States Bankruptcy Code, codified at Title 11 of the United States Code.

4. Thereafter, Debtors executed and delivered to the Bank an additional promissory note and granted additional mortgages on the real property. (Bank's Ex. P.)

5. Each of the Bank's mortgages describe certain real property located in the Town of Morristown, County of Saint Lawrence, New York, consisting of four (4) separate tax parcels owned by Debtors (collectively, the "Premises"). (Debtors' Ex. 3.)

6. Tax map parcel numbers 112.028-3-3.211 and 112.028-3-29.1 include a one story doublewide mobile home with wood frame additions that Debtors occupy and use as their residence and office (the "Residence/Office Parcel"). (Debtors' Ex. 6; Bank's Ex. S.)

7. Tax map parcel number 112.028-3-4 comprises the lakefront parcel consisting of eight (8) rental cottages (five (5) wood frame cottage structures, two (2) singlewide mobile homes with wood frame additions, and one (1) mobile home) (the "Lakefront Parcel"). (Debtors' Ex. 6; Bank's Ex. S.)

8. Tax map parcel number 112.028-3-2 comprises a single rental mobile home (the "Single Trailer Parcel"). (Debtors' Ex. 6; Bank's Ex. S.)

9. At all relevant times, Debtors were and are sole proprietors doing business at the Premises under the assumed name of Snyder's Breezy Point Cottages, which, with the exception of the Debtors' residence and office, rents the cottages and mobile homes for seasonal occupancy.

10. Debtors subsequently defaulted on the payments due to the Bank. A Judgment of Foreclosure and Sale was entered on June 21, 2010, by the Honorable David Demarest, in a state court foreclosure action assigned Index Number 10-132920 in the Saint Lawrence County Supreme Court. (Bank's Ex. P.)

11. Debtors filed their Chapter 13 bankruptcy petition on July 28, 2010 (the "Filing Date").

12. As of the Filing Date, Debtors owe the Bank the sum of $307,843.90 (the "Indebtedness"). (Bank's Ex. P.)

13. Debtors' Amended Plan proposes to retain the Residence/Office Parcel and the Single Trailer Parcel pursuant to § 1325(a)(5)(B). Debtors' Amended Plan also proposes to surrender the Lakefront Parcel pursuant to § 1425(a)(5)(C). (Bank's Ex. D.)

14. In addition, Debtors' Amended Plan proposes to modify the Bank's rights pursuant to § 1322(b)(2) by allocating a portion of the Indebtedness to the Residence/Office Parcel, a portion of the Indebtedness to the Single Trailer Parcel, and another portion of the Indebtedness to the Lakefront Parcel, and, with respect to the portions of the Indebtedness secured by the Residence/Office Parcel and by the Single Trailer Parcel, by reducing the contract interest rate and extending the loan term. (Bank's Ex. D.)

15. Considered as a separate parcel, the Residence/Office Parcel has a market value of $50,000.00. (Debtors' Ex. 5; Bank's Ex. S.)

16. Considered as a separate parcel, the Single Trailer Parcel has a market value of $21,500.00. (Debtor's Ex. 4.)

17. The Premises, considered as one economic unit, has a market value of $270,000.00. (Bank's Ex. S.)

18. The Lakefront Parcel and the Single Trailer Parcel, considered as one economic unit, has a market value of $180,000.00. (Bank's Ex. S.)

19. Debtor Cheryl Snyder testified that although Debtors separately acquired the four tax map parcels, they have continuously operated the Premises as one economic unit.

20. During the confirmation hearing, the Bank's expert witness, Donald G.M. Coon, III, a New York State certified general real estate appraiser and owner of DGM Coon & Company, testified that the highest and best use of the Premises was as one consolidated economic unit for reasons contained within his Complete Appraisal dated August 9, 2011. (Bank's Ex. S.)

## ARGUMENTS

The dispositive question is whether the alternatives in § 1325(a)(5) for the treatment of secured claims of non-consenting secured creditors provided for are mutually exclusive. The Bank says that they are such that a Chapter 13 debtor may not combine subsections (B) and (C) to create a hybrid remedy. Debtors, on the other hand, believe that the Amended Plan may provide for surrender of only the Lakefront Property as well as the retention and cram down of the Residence/Office Parcel and the Single Trailer Parcel.

Debtors have advanced a complete and thorough set of arguments based on both legal and equitable grounds. First, Debtors argue that the plain language of § 1325(a)(5) allows a partial surrender because the word "or" separating the subsections of § 1325(a) is nonexclusive as described in § 102(5). In support, Debtors urge the Court to adopt the holding and reasoning of *In Re McCommons*, 288 B.R. 594 (Bankr. M.D. Ga. 2002) (allowing partial surrender of personal property and cram down of remaining collateral), as well as the holding of *United States v. White*, 340 B.R. 761 (E.D.N.C. 2006), *rev'd on other grounds*, 487 F.3d 199 (4th Cir. 2007) (same). Debtors acknowledge but urge the Court to reject the holdings and bases of contrary case law, including *Williams v. Tower Loan of Mississippi, Inc. (In re Williams)*, 168 F.3d 845 (5th Cir. 1999) (rejecting the notion that the use of the word "or" in § 1325(a) creates a fourth alternative for debtors), *In re Elkins*, 2005 Bankr. LEXIS 2900 (Bankr. S.D. Ohio Aug. 16, 2005)

(same), and *In re Covington*, 176 B.R. 152 (Bankr. E.D. Tenn. 1994) (same).  Second, Debtors point to and cite a leading Chapter 13 treatise for the proposition that although the position espoused by the *Williams* line of cases–requiring the surrender of *all* collateral–is supported by a logical reading of § 1325(a)(5)(C), it is inconsistent with the provisions of Chapter 13 when taken as a whole.  Third, in this particular case, Debtors contend that a mutually exclusive reading of § 1325(a)(5) will produce discomforting results by forcing Debtors from the home they've maintained for the past thirty-six (36) years.  In addition, they assert that the Bank is better able to assume the risk of loss, if any, from the proposed treatment of its claim in the Amended Plan.

The Bank sees the Court's adjudication of this matter as being straightforward and guided by Circuit Court of Appeals precedent.  Specifically, the Bank draws the Court's attention to *Williams*, *First Brandon National Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552, 557 (2nd Cir. 1993) (addressing identical language in § 1225(a)(5) and ruling that the phrase "'the property securing such claim' in (C) refers to all the debtor's collateral and that a transfer of only part of the collateral cannot be accomplished through that section"), and *In re Philadelphia Newspapers, LLC*, 559 F.3d 298, 307 n.7 (3rd Cir. 2010) (agreeing in dicta with the Fifth Circuit's holding in *Williams* that the list of three options, separated by "or," in some cases, e.g., when dealing with the treatment of secured claims, creates a type of exclusivity in that it does not permit the selection of a fourth non-enumerated or non-statutory option").  The Bank argues that these cases should be dispositive.  The Bank further argues that its position is consistent with that of the majority of bankruptcy courts that have decided this issue since *Williams*, including the United States Bankruptcy Court for the Southern District of Ohio, which issued *Elkins*, and the United States Bankruptcy Court for the District of Wyoming, which issued *In re Von Gunten*, 2011

Bankr. LEXIS 2357 (Bankr. D. Wyo. June 15, 2011) (disallowing a "conditional" surrender or "composite remedy" upon a determination that *Williams* and subsequent cases following same were persuasive).

## DISCUSSION

The Bankruptcy Code's mandates for the treatment of secured claims under Chapter 13 are set forth in § 1325(a)(5). In order for a Chapter 13 debtor to obtain confirmation, the plan must provide:

> (5) with respect to each allowed secured claim provided for by the plan–
> (A)    the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C)    the debtor surrenders the property securing such claim to such holder . . .

11 U.S.C. § 1325(a)(5). Here, Debtors propose a partial surrender of certain real property pursuant to subsection (C), and payment of the remainder of the Bank's secured claim pursuant to subsection (B). As the court so aptly put it in *Covington*, Debtors "cannot have it both ways." *Covington*, 176 B.R. at 155. Rather, they must utilize one provision or the other: surrender the Premises to the Bank in compliance with § 1325(a)(5)(C) or cram down the Bank's secured claim in its entirety in the manner required by § 1325(a)(5)(B).

Repeating the analysis done by Bankruptcy Judge Hoffman in *Elkins*, which this Court adopts in full, would serve no purpose. In fact, if *Elkins* were not published, this Court would have quoted the identical language from *Williams* and *Covington*. Like Judge Hoffman, the undersigned finds the decisions in *Williams* and *Covington* to be "well-reasoned and persuasive." *Elkins*, 2005 Bankr. LEXIS 2900, *8. Moreover, this Court agrees that "[t]he presumption in

favor of a debtor's fresh start does not permit a court to rewrite § 1325(a)(5) to provide relief that is otherwise unavailable," *id.* at *8–9, and that "had Congress intended § 1325(a)(5) to permit partial surrender of collateral it could have done so by drafting part (C) to permit a debtor to surrender *all or part* of the property securing a claim," *id.* at 9 (citing *In re Schwartz*, 1998 Bankr. LEXIS 74 (Bankr. E.D. Pa. Jan. 22, 1998)).  As the Second Circuit similarly observed, albeit in the context of a Chapter 12 case construing the identical language to that contained in § 1325(a)(5)(C), "the property securing such claim," means "the entire collateral."  *Kerwin*, 996 F.2d at 557.  As the Court in *Von Guten* implicitly acknowledged, there is little to add to *Elkins* and the already existing line of cases.  *Von Guten*, 2011 Bankr. LEXIS 2357, *5 (succinctly stating that the court found, among others, *Elkins*, *Williams*, and *Covington* to be persuasive). Accordingly, the Court concludes that § 1325(a)(5) does set forth mutually exclusive options for the treatment of secured claims.[2]

## CONCLUSION

Debtors have indicated in their hearing testimony and post-trial submission that absent the ability to surrender a portion of the Premises to the Bank, given their respective ages, state of retirement, and combined income, they may not wish to or may not be financially able to retain the entire Premises.  Should they decide, however, to propose a second amended plan utilizing the cram down provision codified at § 1325(a)(5)(B), the parties have stipulated that the allowed amount of the Bank's secured claim is $270,000.00, thereby settling the issue of valuation for future plan purposes.

---

[2] The Court does see fit to add that even in the *McCommons* case principally relied on by Debtors where partial surrender was held to be permissible under the Bankruptcy Code, the court recognized that it could only be allowed if the collateral could appropriately be divided for separate consideration.  *McCommons*, 288 B.R. at 597 ("If the value of the collateral as a whole is dependent upon it remaining as a unit, then the debtor may not surrender a portion of it.").  Given the nature of the Premises, and as testified to by the Bank's expert witness, the Premises is considerably more valuable as a whole and when classified as a business or commercial property.  Thus, it appears, even if the Court were swayed by Debtors legal arguments, it would not necessarily reach a different outcome in this case.

Based on the foregoing, confirmation of the Amended Plan is denied. Debtors shall have thirty (30) days within which to file and serve a second amended plan or, alternatively, move for conversion or dismissal of their Chapter 13 case. In the event Debtors do not comply with this directive, the Chapter 13 Trustee may submit an ex parte order dismissing Debtors' case.

IT IS SO ORDERED.

Dated at Utica, New York
This 2nd day of April 2012

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge